IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| HANNAH BACHISM and JOSEPH RUPPRECHT, <br><br> Plaintiffs, <br><br> v. <br><br> SOUTHEASTERN PENNSYLVANIA TRANSIT AUTHORITY and MATTHEW SINKIEWICZ, <br><br> Defendants. | CIVIL ACTION <br><br> No. 22-_____ <br><br> JURY TRIAL DEMANDED |

**COMPLAINT**

**I.    INTRODUCTION**

1.   On May 30, 2020, during a peaceful protest against police brutality, Southeastern Pennsylvania Transit Authority ("SEPTA") Police officer Matthew Sinkiewicz attacked plaintiffs Hannah Bachism and Joseph Rupprecht, striking them on their heads with a baton and causing significant wounds. They had done nothing to provoke these assaults.

2.   At the time they were assaulted, Bachism and Rupprecht were participating in the widespread, peaceful demonstrations against police violence in Philadelphia, which emerged as part of the larger movement against police misconduct and racism proliferating throughout the country at the time.

3.   As a result of defendant Sinkiewicz's conduct, and as a result of defendant SEPTA's failure to train, supervise, and discipline Sinkiewicz, plaintiffs have suffered substantial harms and losses, including physical pain and suffering and emotional trauma.

Bachism and Rupprecht bring this action asserting claims under 42 U.S.C. § 1983 to hold the defendants accountable for the egregious violations of their civil rights.

## II. JURISDICTION AND VENUE

4. This Court has jurisdiction over the subject matter of this Complaint under 42 U.S.C. § 1983 and 28 U.S.C. §§ 1331, 1343(a)(3), 1343(a)(4), and 1367(a).

5. This Court is the proper venue pursuant to 28 U.S.C. § 1391(b) because the events giving rise to the claims occurred in the Eastern District of Pennsylvania.

## III. PARTIES

6. Plaintiff Hannah Bachism is a 22-year-old Temple University graduate and resident of Philadelphia, Pennsylvania.

7. Plaintiff Joseph Rupprecht is a 26-year-old editor, researcher, poet, and resident of Philadelphia, Pennsylvania.

8. Defendant Southeastern Pennsylvania Transportation Authority ("SEPTA") is a governmental agency that owns, operates, manages, directs, and controls the SEPTA Police Department, which employed Matthew Sinkiewicz in May 2020.

9. Defendant Matthew Sinkiewicz was at all times relevant to this Complaint a police sergeant employed by SEPTA. He is sued in his individual capacity.

10. At all times relevant to this Complaint, all defendants acted under color of state law. All defendants are jointly and severally responsible for the harms caused to plaintiffs.

## IV. FACTS

### A. Protest Against Police Brutality in Philadelphia on May 30, 2020

11. On May 25, 2020, George Floyd, an unarmed Black man, was killed in Minneapolis, Minnesota by a police officer who kneeled on his neck for almost nine minutes

until his death. Several other officers watched while this killing occurred, as Mr. Floyd told the officers that he could not breathe and pleaded for his life.

12. In the days and weeks following the police killing of Mr. Floyd, people across the United States and the world gathered to protest his death and the larger pattern of police violence against Black people. Protesters focused on the recent killings of Breonna Taylor and Mr. Floyd, and also drew attention to the countless other Black people who have been killed by police officers, the disparate treatment Black people experience in interactions with police, and the disproportionate funding allocated to police departments compared to other city services in municipalities across the country.

13. Bachism and Rupprecht did not know one another before May 30, 2020. They were two of the many Philadelphia residents who, inspired by the national movement against police violence and the tragic death of Mr. Floyd, joined with thousands of other people to attend a peaceful demonstration on May 30, 2020.

14. Protesters, including Bachism and Rupprecht, gathered at the Philadelphia Museum of Art and marched down the Benjamin Franklin Parkway to City Hall. They then marched north on Broad Street and eventually gathered outside the Municipal Services Building ("MSB") around 4:30pm.

15. Bachism and Rupprecht remained at that location for approximately thirty minutes.

16. At that time, several lines of Philadelphia police officers carrying shields and batons were positioned between protesters and the MSB with more law enforcement officers continuing to join their ranks.

17. Police personnel from other agencies joined the Philadelphia Police Department (PPD) officers either as a result of PPD seeking the help of other law enforcement agencies to assist with its response to the protest or, in the alternative, because officers from other law enforcement agencies, including SEPTA Police, volunteered to assist.

18. SEPTA sergeant Matthew Sinkiewicz was one of the law enforcement officers stationed in front of the MSB. In contrast to the Philadelphia police officers wearing white or light blue uniforms surrounding him, defendant Sinkiewicz was dressed in a black uniform.

19. As the police formed lines in front of the MSB, Bachism, Rupprecht, and other protesters continued to peacefully demonstrate, waving signs and chanting slogans in opposition to police violence.

20. Shortly before 5:00pm, the line of law enforcement officers closest to the protesters, including defendant Sinkiewicz, began charging forward, pushing protesters backward with metal barricades and shields.

21. The police did not make any announcements to disperse or warnings to the crowd before moving forward into the group of protesters and using force to attempt to remove them from the area.

22. Defendant Sinkiewicz was carrying a baton in his left hand and swinging it at protesters.

**B.     Defendant Sinkiewicz's Assault on Hannah Bachism**

23. As police began to attempt to clear the area in front of MSB with force, defendant Sinkiewicz pushed Bachism once with his shield.

24. Bachism raised a hand to maintain physical distance between their body and defendant Sinkiewicz.

4

25. Defendant Sinkiewicz then moved his shield to the side and struck Bachism with his baton once or twice, hitting Bachism's head.

26. Bachism was dazed from the blow to the head and attempted to get away from defendant Sinkiewicz as quickly as possible, tripping off the stairs leading up to the MSB and losing a shoe.

27. Bachism ran through the crowd away from the MSB until they were able to get medical attention from nearby volunteer Emergency Medical Technicians ("EMTs") who recommended they go to the hospital.

28. At that time, blood was flowing from a gash in Bachism's head, which had begun to swell.

29. Bachism was able to locate a friend who drove them to Temple Hospital.

30. Once at the hospital, Bachism was treated for a traumatic head injury and scalp laceration. Temple Hospital medical staff used Bachism's hair and surgical glue to close the two-inch head wound.

31. For many months after the assault, Bachism experienced extreme sensitivity at the site of their injury.

32. Bachism has also suffered psychological effects of the incident including fear of participating in subsequent protests and increased anxiety.

**C.     Defendant Sinkiewicz's Assault on Joseph Rupprecht**

33. As law enforcement officers, including defendant Sinkiewicz advanced on the crowd of protesters, a protester standing near Rupprecht was hit by a police shield. Rupprecht caught the other protester before he hit the ground and then attempted to prevent the shield from striking anyone else.

34. Defendant Sinkiewicz lunged forward toward Rupprecht and violently struck him on the head with his baton.

35. Rupprecht immediately collapsed to the ground from the force of the blow to his head.

36. He began bleeding profusely from his head wound and after extricating himself from the crowd, he sought out the assistance of medical personnel.

37. Volunteer EMTs evaluated his injuries and applied bandages and pressure to his head wound. One volunteer EMT drove Rupprecht to the Jefferson Hospital Emergency Room for further medical treatment out of concern for the extent of his injuries.

38. Once at the hospital, Rupprecht was treated for a head injury and scalp laceration and was diagnosed with a concussion. He required ten staples to close his head wound and hospital staff performed a CT scan to evaluate for potential brain injuries.

39. In the weeks that followed, Rupprecht experienced painful migraines and eye floaters as a result of the concussion he sustained. The eye floaters lasted over six months, disrupting Rupprecht's vision and causing him concern about long-term damage.

40. Rupprecht also experienced psychological trauma responses to the assault including depression, hopelessness, anxiety, and fear, especially in the presence of law enforcement.

**D.    SEPTA's Responsibility for Bachism and Rupprecht's Harms and Losses**

41. The unlawful conduct of defendant Sinkiewicz and the harms suffered by Bachism and Rupprecht are directly attributable to the affirmative decisions by policymakers of SEPTA and the failures to act on the part of those policymakers with deliberate indifference to the risk that such failures would lead to the violation of civilians' constitutional rights.

i. **The Failure to Train SEPTA Police and the Pattern of SEPTA Police Officers Use of Excessive Force**

42. SEPTA has a long history of failing to address a pattern of excessive force by its officers and has failed to provide adequate training to prevent the types of assaults that Bachism and Rupprecht sustained from occurring.

43. In the years preceding defendant Sinkiewicz's actions on May 30, 2020, there were numerous well-publicized incidents in which SEPTA police brutalized civilians in the course of their duties, including the following examples:

> a. Plaintiff Richard Schafferman, in civil action no. 2:15-cv-03731, alleged that in July 2013, two SEPTA officers arrested him without justification, punched him, kicked him, and struck him in the head with a baton. His civil case against SEPTA settled in 2016.[1]
>
> b. In June 2015, SEPTA's internal affairs unit investigated an officer for grabbing a man by the throat and throwing him against the wall of the subway train while the man was holding his infant daughter. SEPTA Police Chief Thomas Nestel took public responsibility for the incident claiming that it was "a failure on [his] part" that the officer believed this level of force was appropriate in response to an allegation of fare evasion.[2] The officer was not fired.

---

[1] Lacey McLaughlin, *Man sues SEPTA police over alleged civil rights violation,* PENNSYLVANIA RECORD (July 17, 2015), *available at:* https://pennrecord.com/stories/510627203-man-sues-septa-police-over-alleged-civil-rights-violation (last accessed May 12, 2022).
[2] Vince Lattanzio, *Dad Holding Daughter Arrested for Evading El Fare, But Questions Remain Over Use of Force*, NBC PHILADELPHIA (June 26, 2015), *available at*: https://www.nbcphiladelphia.com/news/national-international/septa-talks-about-caught-on-video-arrest-that-went-viral/62632/ (last accessed May 11, 2022).

    c. A man died in SEPTA police custody in October 2015 after a SEPTA police officer tased him ten times in two minutes and failed to take him to the nearest hospital. The officer was returned to active duty a few months later.[3]

    d. In April 2018, two SEPTA officers were arrested and charged for a December 2017 incident in which they beat a man on the subway platform of the Frankford Transportation Center, leaving the man with a broken nose and a concussion.[4]

    e. In January 2019, SEPTA officers pepper sprayed and beat homeless people with batons in their efforts to force them to leave Suburban Station on a below-freezing night, drawing criticism and concern from community members and homeless advocacy organizations.[5]

44. SEPTA had been aware of the likelihood of such conduct for decades. For example, in 2001, Eastern District of Pennsylvania Judge James McGirr Kelly issued a Memorandum Opinion regarding a wrongful death claim against SEPTA police cautioning against SEPTA's failure to train. Judge Kelly noted that "the Court is disturbed by SEPTA's careless attitude towards the training of its officers" and warned that "SEPTA should not wait

---

[3] Associated Press, *Death of Man Hit by Stun-Gun on SEPTA Tracks Was Drug-Related: Report,* NBC PHILADELPHIA (March 7, 2016), available at: https://www.nbcphiladelphia.com/news/local/man-tased-by-police-on-septa-tracks-died-of-overdose-investigators/157505/ (last accessed May 12, 2022).

[4] Mensah M. Dean, *Two ex-SEPTA cops charged with beating man at Frankford station,* PHILADELPHIA INQUIRER (April 12, 2018), *available at:* https://www.inquirer.com/philly/news/septa-cops-charged-beating-man-frankford-station-20180412.html (last accessed May 11, 2022).

[5] Jason Laughlin, *SEPTA police used pepper spray, batons on homeless people in Philly*, THE MORNING CALL (Feb 8, 2019), *available at*: https://www.mcall.com/news/breaking/mc-nws-septa-homeless-clash-20190208-story.html (last accessed May 12, 2022).

until the next fatal shooting to better train its police force." *Davis v. SEPTA*, 2001 U.S. Dist. LEXIS 21116 at *23 (E.D. Pa. Dec 20, 2001).

45. Given this documented history of excessive force and warnings issued by the community and courts, by May 2020, SEPTA leadership knew and understood that SEPTA officers needed additional training and discipline to prevent further instances of excessive force. Despite that knowledge, SEPTA, with deliberate indifference, failed to implement appropriate measures to curb officer violence.

### ii. The Failure to Train, Supervise, and Discipline Defendant Sinkiewicz

46. For years prior to his May 30, 2020, assaults on Bachism and Rupprecht, SEPTA was aware that defendant Sinkiewicz had a history of using excessive and unreasonable force against civilians.

47. In June 2016, a disturbing video of defendant Sinkiewicz was widely circulated on social media, depicting him slamming a handcuffed man to the ground and threatening bystanders who were recording the incident.[6]

48. In addition to the assault on the detained man, defendant Sinkiewicz attempted to evade accountability by failing to record the victim's conduct that led to the interaction, in violation of SEPTA's body camera policy.

49. Despite SEPTA's awareness of this incident and SEPTA Transit Police Chief Thomas Nestel III's characterization of defendant Sinkiewicz's conduct as "unacceptable," defendant Sinkiewicz was permitted to maintain his position as a SEPTA Police officer.

---

[6] Olivia Exstrum, *SEPTA cop, seen in video roughing up man, keeps job*, THE PHILADELPHIA INQUIRER (July 1, 2016), *available at:* https://www.inquirer.com/philly/news/20160702_SEPTA_cop_seen_in_video_roughing_up_man_keeps_job.html (last accessed May 11, 2022).

50. Notwithstanding the knowledge of SEPTA's highest-ranking officers that defendant Sinkiewicz had engaged in violent misconduct, in 2019, SEPTA promoted defendant Sinkiewicz to the rank of sergeant.

51. In promoting defendant Sinkiewicz, SEPTA communicated to its officers not only that it would tolerate such misconduct, but also that it would reward misconduct with a position providing more pay and responsibility.

52. Despite his history of excessive force, SEPTA deployed Sinkiewicz to assist Philadelphia police officers with crowd control at the MSB on May 30, 2020, a highly charged situation that placed him in direct contact with civilians and resulted in the instant assaults.

53. Defendant Sinkiewicz remained on the SEPTA Police force as a sergeant until his position was terminated in July 2020 as a result of his assaults on Bachism and Rupprecht and his misrepresentations in official paperwork regarding the assaults.[7]

54. In October 2020, defendant Sinkiewicz was arrested and charged with two counts of aggravated assault, simple assault, recklessly endangering another person, unsworn falsifying and official oppression in relation to his assault on Bachism and Rupprecht and his related conduct outside the MSB on May 30, 2020. The Philadelphia District Attorney's Office is still pursuing those charges.

### E. The Violations of Plaintiffs Bachism and Rupprecht's Constitutional Rights and their Damages

55. There was no legal cause to justify the uses of force deployed against Bachism and Rupprecht on May 30, 2020.

---

[7] Patricia Madej and Oona Goodin-Smith, *Former SEPTA police sergeant charged with assault for alleged violence during Black Lives Matter protests*, THE PHILADELPHIA INQUIRER (October 22, 2020), *available at:* https://www.inquirer.com/news/septa-police-protest-arrest-george-floyd-philadelphia-20201022.html (last accessed May 11, 2022).

56. At no time did either Bachism or Rupprecht commit any offense in violation of the laws of the City of Philadelphia, the Commonwealth of Pennsylvania, or the United States, and there was no legal cause to justify defendant Sinkiewicz's use of force against them.

57. Bachism and Rupprecht, neither of whom carried weapons, posed no threats to themselves, to their fellow protesters, or to the police officers who were outfitted in tactical gear and carrying protective shields and weapons.

58. When defendant Sinkiewicz used force against Bachism and Rupprecht, they were engaged in protected political speech, and defendant Sinkiewicz used force against them in retaliation for their political speech.

59. At all times relevant to this Complaint, the conduct of defendant Sinkiewicz was willful, reckless, and in callous disregard of Bachism and Rupprecht's rights under federal and state law.

60. As a direct and proximate result of the conduct of defendants, Bachism and Rupprecht suffered and continue to suffer physical harm and emotional trauma.

V.    **CAUSES OF ACTION**

**Count 1**
**Plaintiffs v. Defendant Sinkiewicz**
**Unlawful Use of Force**

61. The actions of defendant Sinkiewicz violated Bachism and Rupprecht's rights under the Fourth and Fourteenth Amendments to the United States Constitution to be free from the unreasonable use of force.

**Count 2**
**Plaintiffs v. Defendant Sinkiewicz**
**Retaliation Against Protected Speech**

62. Defendant Sinkiewicz used force against Bachism and Rupprecht in retaliation for their engaging in protected political speech, and as such, violated their rights to freedom of speech under the First and Fourteenth Amendments to the United States Constitution.

**Count 3**
**Plaintiffs v. Defendant SEPTA**
**Municipal Liability**

63. The violations of Bachism and Rupprecht's constitutional rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution, their damages, and the conduct of defendant Sinkiewicz were directly and proximately caused by the actions and/or inactions of defendant SEPTA, which encouraged, tolerated, ratified and was deliberately indifferent to the following policies, practices and customs and to the need for more or different training, supervision, investigation or discipline in the areas of:

  a. The accepted practice of SEPTA police officers' use of excessive force against civilians and the failure to train and discipline officers with deliberate indifference to the obvious consequences of further violations of civilians' constitutional rights; and

  b. The failure to discipline, train, or properly monitor the actions of defendant Sinkiewicz given his prior, well-publicized violation of a civilian's constitutional rights, as well as the decision to promote him to sergeant given his prior conduct.

### Count 4
### Plaintiffs v. Defendant Sinkiewicz
### State Law Claims

64. The actions of defendant Sinkiewicz on May 30, 2020, constitute the torts of assault and battery under the laws of the Commonwealth of Pennsylvania.

**VI.   REQUESTED RELIEF**

Wherefore, plaintiffs Bachism and Rupprecht respectfully request:

A. Compensatory damages as to all defendants;

B. Punitive damages as to defendant Sinkiewicz

C. Reasonable attorneys' fees and costs as to all defendants;

D. Such other and further relief as may appear just and appropriate.

Plaintiffs hereby demand a jury trial.

Respectfully submitted,

*/s/ Jonathan H. Feinberg*
Jonathan H. Feinberg
Attorney No. 88227

*/s/ Grace Harris*
Grace Harris
Attorney No. 328968

KAIRYS, RUDOVSKY, MESSING, FEINBERG & LIN LLP
718 Arch Street, Suite 501S
Philadelphia, PA 19106
(215) 925-4400
jfeinberg@krlawphila.com
gharris@krlawphila.com

*Counsel for Plaintiffs*